[Cite as *State v. Garver*, 2017-Ohio-1107.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-L-069** |
| CHARLOTTE GAIL GARVER, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000720.

Judgment: Reversed and remanded.

*Charles E. Coulson,* Lake County Prosecutor, and *Karen A. Sheppert,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellant).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, the state of Ohio, appeals from the judgment of the Lake County Court of Common Pleas, sentencing appellee, Charlotte Gail Garver, to three years of community control for a fifth-degree felony theft offense after accepting her plea of guilty. In addition to the community-control sanctions, the trial court ordered appellee to serve 326 days in jail, with 236 days of credit for time served. The majority of the jail-time credit arose from time appellee spent in a Missouri prison after Lake

County issued an arrest warrant. On appeal, the state asserts that appellee was only entitled to 69 days of credit because the arrest warrant was not executed until after she was released from the Missouri prison and the offense for which she was serving time in Missouri was completely unrelated to the underlying Lake County offense. We agree with the state's position. The matter is therefore reversed and remanded.

{¶2} On November 2, 2015, the state filed a precipe in the Lake County Court of Common Pleas to issue a warrant to arrest on indictment. Appellee was listed as the named defendant and the document included her address at a Missouri correctional facility. Appellee was subsequently indicted on two counts of theft, felonies of the fifth degree; one count of falsification in a theft offense, a felony of the fifth degree; one count of falsification, a misdemeanor of the first degree; and one count of receiving stolen property, a misdemeanor of the first degree. On November 5, 2015, a "Warrant on Indictment – Information" was issued ordering the Lake County Sheriff to arrest appellee and bring her before the court. The warrant was ultimately executed on April 25, 2016, when appellee was arrested and brought to the Lake County Jail. Appellee eventually pleaded guilty to one count of theft, a felony of the fifth degree.

{¶3} At sentencing, defense counsel argued that, pursuant to *State v. Caccamo*, 11th Dist. Lake No. 2015-L-48, 2016-Ohio-3006, appellee was entitled to jail-time credit for time served as of the date of the arrest warrant. Defense counsel asserted that once there is a holder on an individual, jail-time credit shall be given starting on the date of that holder. Defense counsel observed:

{¶4} It's my understanding, Your Honor, based upon a warrant to arrest that was sent to the Missouri Correctional Center by the State placing a holder on Miss Garver, there is a date on this - - on this arrest warrant of October 30th, 2015. I do not know the exact date that the actual holder was put into effect but based on - - based on

2

this warrant I do believe that October 30th of 2015 is the date when that credit shall be applied from. So, Miss Garver had served two days prior in - - when this case was in municipal court. So, it's my understanding based on *State v. Caccamo* that Miss Garver has 236 days of credit in this matter.

{¶5} The state objected to defense counsel's position, arguing appellee was entitled to only 69 days of jail-time credit; it maintained she was entitled to credit for two days from the date of her arrest until she was bonded out of jail and 67 days from the time she finished her Missouri prison sentence and was brought back to Lake County and ultimately sentenced.

{¶6} The trial court ultimately agreed with defense counsel's position and sentenced appellee to three years of community control. The trial court also ordered appellee to serve 326 days in the Lake County Jail, with 236 days of credit for time served. Pursuant to R.C. 2953.08(B)(2), the state now appeals assigning the following as error:

{¶7} "The granting of jail-time credit was contrary to law."

{¶8} "'We review the trial court's determination as to the amount of credit to which [a defendant] is entitled under the 'clearly and convincingly' contrary to law standard." *State v. Smith,* 11th Dist. Geauga No. 2014-G-3185, 2014-Ohio-5076, ¶15; R.C. 2953.08(G)(2); *see State v. Marcum,* [146] Ohio St.3d [516], 2016-Ohio-1002, ¶1 ('an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law')." *State v. Moore*, 11th Dist. Ashtabula No. 2015-A-0069, 2016-Ohio-3510, ¶15.

{¶9} The calculation of jail-time credit is generally governed by R.C. 2967.191, which provides, in relevant part: "The department of rehabilitation and correction shall

3

reduce the stated prison term of a prisoner * * * by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced * * *." Furthermore, R.C. 2929.19(B)(2)(g)(i) provides it is the trial court that is obligated to "[d]etermine, notify the offender of, and include in the sentencing entry the number of days that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced * * *."

{¶10} In granting appellee the jail-time credit at issue, the trial court relied upon this court's holding in *Caccamo*, supra. In that case, Caccamo pleaded guilty to seven charges of identity theft in the Lake County Court of Common Pleas. He was sentenced to two years community control and 150 days in the Lake County Jail. Caccamo was later arrested in Cuyahoga County and charged with passing bad checks. He was held in the Cuyahoga County Jail from January 17, 2014 until March 4, 2014, at which time the Cuyahoga County Court of Common Pleas accepted his guilty plea to a new charge and sentenced him to eight months imprisonment. He was subsequently imprisoned pursuant to this order.

{¶11} On January 22, 2014, the Lake county probation department caused an arrest warrant to be issued against Caccamo; the warrant was not executed until April 22, 2014, after his transfer to prison. The state then moved to terminate the community control sanctions. A termination hearing took place on May 12, 2014, at which Caccamo pleaded guilty to violating the terms of his community control. The trial court granted the state's motion to terminate and the case proceeded to sentencing.

{¶12} During the hearing, the state argued that Caccamo was entitled to 33 days of jail-time credit (12 days he was held in 2012 prior to pleading guilty to the seven identity fraud charges and 21 days he was held in the county jail between his

4

conveyance from the state prison and the date of the final hearing). The trial court ultimately sentenced Caccamo to a prison term of 26 months on the seven charges, to be served concurrently with the eight-month term in the Cuyahoga County case. The trail court also adopted the state's recommendation on Caccamo's jail-time credit.

{¶13} On appeal, Caccamo argued the trial court erred in calculating the jail-time credit because his confinement in Cuyahoga County was based upon the alleged community control violation in Lake County. Relying on the Supreme Court of Ohio's decision in *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, a majority of this court agreed with Caccamo.

{¶14} In *Fugate,* Fugate was serving community control sanctions on a previous offense when he was indicted on two new felony offenses. While he was in jail on those new charges, the probation department sought to revoke his community control. At the sentencing hearing on both the new case and the community control violation, the trial court imposed concurrent prison terms, but gave Fugate jail-time credit on the community control case only. On appeal, Fugate argued he was entitled to have jail-time credit deducted from both sentences. The Tenth Appellate District affirmed the trial court. On discretionary appeal, the Supreme Court agreed with Fugate's argument, holding "[w]hen a defendant is sentenced to concurrent prison terms for multiple charges, jail-time credit pursuant to R.C. 2967.191 must be applied toward each concurrent prison term." *Fugate, supra*, syllabus.

{¶15} Due to the factual similarities with *Fugate*, a majority of this court concluded Caccamo was entitled to jail-time credit for time served. First, this court noted the trial court in Caccamo's Lake County case ordered the aggregate sentence on the identity theft charges be served concurrently with the eight-month term in the

5

Cuyahoga County proceeding. Further, this court underscored that the community control violation holder was placed upon Caccamo just five days after he was incarcerated on the Cuyahoga County charge. With respect to the latter point, the majority opinion observed:

> {¶16} In attempting to distinguish *Fugate,* some appellate courts have concluded that the *Fugate* analysis should not be followed when the concurrent prison terms are imposed by different trial courts at different times. *See, e.g., State v. Marini,* 5th Dist. Tuscarawas No. 09-CA-06, 2009-Ohio-4633, ¶23. However, given that the existence of the holder justifies appellant's continuing incarceration had the Cuyahoga County charge been dismissed, the foregoing distinction is unpersuasive because it would defeat the underlying principle that a defendant is entitled to credit for all presentencing incarceration based upon the pending charges in the underlying case. Since appellant's confinement in the Cuyahoga County Jail was predicated in part upon the seven "identity theft" charges in Lake County, he is entitled to jail-time credit for the days from January 22, 2014 until April 21, 2014.

{¶17} Accordingly, the majority opinion in Caccamo concluded the trial court erred in failing to grant the additional jail-time credit.

{¶18} This case is distinguishable from both *Caccamo* and *Fugate*. Although the record indicates the state placed a holder on appellee subsequent to issuing the arrest warrant, appellee was not serving the term of imprisonment in Missouri concurrently with any other sentence imposed as a result of the warrant. The charges that facilitated the warrant were unrelated to appellee's Missouri offense and had not been prosecuted, let alone adjudicated. While it is true that the holder would prevent her from "walking away" after her release from the Missouri correctional facility, this fact does not automatically imply she was entitled to jail-time credit from the time the warrant or precipe was issued. The Missouri offense and the Lake County offenses were

6

completely unrelated and the holder in this case was simply a tool to secure appellee's presence in Lake County *upon* her release from the Missouri prison.

{¶19} The holding announced in *Caccamo,* as well as its application of *Fugate*, cannot be read in a vacuum. The result in *Caccamo* was a function of both the existence of the community-control-violation holder *and* the imposition of a sentence on the community-control termination ordered to run concurrently with the sentence imposed for offenses that caused the issuance of the community-control-violation holder. These are not the circumstances of this case and the existence of the holder on the Lake County warrant was insufficient, unto itself, to trigger jail-time credit. As this court has previously noted "there is no jail-time credit for time served on unrelated offenses, even if that time served runs concurrently during the pre-detention phase of another matter." *State v. Struble*, 11th Dist. Lake No. 1005-L-115, 2006-Ohio-3417, ¶11. The time appellee spent in a Missouri prison, even after the Lake County holder was issued, did not arise out of the offense for which she was convicted in Lake County. *See* R.C. 2967.191. Accordingly, neither *Caccamo* nor *Fugate* entitles appellee to jail-time credit from October 30, 2015; under the facts of this case, appellee was entitled to 69 days of jail-time credit as proposed by the state at sentencing.

{¶20} The state's assignment of error has merit.

{¶21} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is reversed and remanded.


DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

7

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶22} It is the majority's position that this case is distinguishable from both *State v. Caccamo,* 11th Dist. Lake No. 2015-L-048, 2016-Ohio-3006 (Rice, P.J., dissented with a Dissenting Opinion)[1] and *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856. The majority is reversing and remanding based upon its agreement with the state's position that the trial court erred in granting Ms. Garver 236 days of jail time credit based upon the issuance of the Lake County arrest warrant while she was serving a prison sentence in Missouri. As I believe the trial court properly applied *Caccamo* and *Fugate* and, therefore, would affirm its judgment, I respectfully dissent.

{¶23} "The practice of awarding jail-time credit, although now covered by state statute, has its roots in the Equal Protection Clauses of the Ohio and United States Constitutions. Recognizing that the Equal Protection Clause does not tolerate disparate treatment of defendants based solely on their economic status, the United States Supreme Court has repeatedly struck down rules and practices that discriminate against defendants based solely on their inability to pay fines and fees. * * * [C]ourts have held that defendants who are unable to afford bail must be credited for the time they are confined while awaiting trial. 'The Equal Protection Clause requires that *all* time spent in any jail prior to trial and commitment by (a prisoner who is) unable to make bail because of indigency *must* be credited to his sentence.' * * *." (Emphasis sic.) (Citations omitted.) *Fugate, supra,* at ¶7.

---

1. This writer was a member on the panel and concurred.

8

{¶24} This principle is codified in Ohio at R.C. 2967.191, which provides that a prisoner's stated prison term shall be reduced "by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced * * *."

{¶25} As stated and addressed by the majority, in granting the jail time credit at issue in the case at bar, the trial court relied upon this court's ruling in *Caccamo, supra.*

{¶26} In *Caccamo*, the appellant, Jason Caccamo, appealed the trial court's determination of his jail time credit asserting that he was entitled to additional credit because the court failed to consider the days he was incarcerated in another county jail on a detainer. *Caccamo,* 2016-Ohio-3006, ¶1. In November 2012, Mr. Caccamo pleaded guilty to seven charges of identity theft in the Lake County Court of Common Pleas. *Id.* at ¶2. He was sentenced to two years of community control and 150 days in the Lake County Jail. *Id.* at ¶2.

{¶27} Mr. Caccamo was later arrested in Cuyahoga County and charged with passing bad checks. *Id.* at ¶3. He was held in the Cuyahoga County Jail from January 17, 2014 until March 4, 2014, at which time the Cuyahoga County Court of Common Pleas accepted his guilty plea to the new charge and sentenced him to eight months in prison. *Id.* Thereafter, Mr. Caccamo was transferred from the Cuyahoga County Jail to the Lorain County Correctional Institution. *Id.*

{¶28} On January 22, 2014, the Lake County probation department caused an arrest warrant to be issued against Mr. Caccamo but it was not executed until April 22, 2014, following his transfer to the state prison. *Id.* at ¶4. The state moved to terminate the community control sanctions. *Id.* A hearing scheduled for April 24, 2014 did not take place. *Id.* at ¶5.

{¶29} A final hearing occurred on May 12, 2014. *Id.* Mr. Caccamo pleaded guilty to violating the terms of his community control sanctions. *Id.* at ¶6. The trial court accepted the guilty plea, granted the motion to terminate, and the case proceeded to sentencing. *Id.* The state argued that Mr. Caccamo was entitled to 33 days of jail time credit (12 days he was held in 2012 prior to pleading guilty to the seven identity fraud charges and 21 days he was held in the county jail between his conveyance from the state prison and the date of the final hearing). *Id.*

{¶30} The trial court sentenced Mr. Caccamo to an aggregate prison term of 26 months on the seven charges, to be served concurrently with the eight-month term in the Cuyahoga County case. *Id.* at ¶7. The trial court also adopted the state's recommendation on Mr. Caccamo's jail time credit, granting 33 days for time served. *Id.*

{¶31} On appeal before this court, Mr. Caccamo argued that the trial court incorrectly calculated jail time credit. *Id.* at ¶9. Mr. Caccamo asserted that his confinement in the Cuyahoga County Jail was based upon the alleged community control violation in Lake County because, even if the Cuyahoga County charge had been dismissed, he still would have remained incarcerated in light of the detainer. *Id.* at ¶12. In support of his argument, Mr. Caccamo relied upon the holding of the Supreme Court of Ohio in *Fugate, supra. Id.*

{¶32} In *Fugate*, the appellant, Daniel Fugate, was serving community control sanctions when he was indicted on two new felony offenses. *Fugate*, 2008-Ohio-856, ¶2-3. While Mr. Fugate was in jail on those new charges, the probation department moved to revoke his community control in the previous case. *Id.* at ¶3. At the sentencing hearing on both the new case and the community control violation, the trial court imposed concurrent prison terms but gave Mr. Fugate credit for time served on the

community control violation case only. *Id.* at ¶3-6, 13-18. The Supreme Court of Ohio agreed with Mr. Fugate's argument that since the two cases were to run concurrently, he was entitled to have the 213 days of jail time credit deducted from both sentences. *Id.* at ¶1, 12.

{¶33} Based on the similar factual scenarios between *Caccamo* and *Fugate*, this court's majority in *Caccamo* applied *Fugate's* reasoning in holding that Mr. Caccamo was entitled to jail time credit for time served on his Lake County case due to the detainer. *Caccamo, supra,* at ¶15-17. This court's majority in *Caccamo* stated:

{¶34} "In attempting to distinguish *Fugate*, some appellate courts have concluded that the *Fugate* analysis should not be followed when the concurrent prison terms are imposed by different trial courts at different times. *See, e.g., State v. Marini*, 5th Dist. Tuscarawas No. 09-CA-06, 2009-Ohio-4633, ¶23. However, given that the existence of the holder justifies [Mr. Caccamo's] continuing incarceration had the Cuyahoga County charge been dismissed, the foregoing distinction is unpersuasive because it would defeat the underlying principle that a defendant is entitled to credit for all presentencing incarceration based upon the pending charges in the underlying case." *Caccamo, supra,* at ¶18.

{¶35} Thus, this court's majority in *Caccamo* found that the trial court erred in failing to grant Mr. Caccamo the additional credit and we reversed and remanded. *Id.* at ¶19, 27.

{¶36} In the case sub judice, Ms. Garver recognizes that *Caccamo* and *Fugate* involved concurrent prison terms whereas in her case, she was already imprisoned in Missouri when Lake County issued its arrest warrant and was returned to Lake County at the conclusion of her Missouri prison sentence. Using the analysis under *Caccamo*

11

and *Fugate*, Ms. Garver asserts that had she been released for whatever reason from her Missouri incarceration, the arrest warrant issued in this matter would have prevented her from simply walking away. Thus, due to Lake County's arrest warrant and resulting holder, Ms. Garver could not have been released from confinement. Accordingly, Ms. Garver is entitled to jail time credit on her Lake County case from the date of the warrant.

{¶37} In support of its position, the state relies on this court's decision in *Moore, supra,* which was decided a month after *Caccamo.* In affirming the trial court's decision, this court in *Moore* found no evidence in the record that a holder existed upon which to contemplate granting jail time credit for time served. *Moore*, 2016-Ohio-3510, ¶21-27.

{¶38} Unlike *Moore*, the record in this case establishes the existence of a holder. At the sentencing hearing, defense counsel indicated that an arrest warrant was issued and referenced the holder. The record shows that on November 2, 2015, the state filed a "Precipe" in the Lake County Court of Common Pleas to "Issue a Warrant to Arrest on Indictment," which was dated October 30, 2015. Ms. Garver was listed as the named defendant and the document included her address as follows: "c/o Women's Eastern REC/Diag/Correctional Center, 1101 E. Highway, Vandalia, MO 63382." (T.d. 10). As the "Precipe" lists the Missouri prison address as Ms. Garver's address, the state clearly knew where she was being held. At sentencing, the prosecutor told the trial court he would not "quibble" with the defense attorney's dates or calculation of credit for time served. (Sentencing T.p. 8). The prosecutor later referenced the "holder" Lake County had placed on Ms. Garver and the "diligence" exhibited by Lake County in placing a "holder" on her. (Sentencing T.p. 18).

12

{¶39} In addition, the record further shows that on November 5, 2015, a "Warrant on Indictment – Information" was filed ordering the Lake County Sheriff to arrest Ms. Garver and bring her before the court. On April 25, 2016, a "Return of Executed Warrant" was filed indicating that a Lake County officer had arrested Ms. Garver and brought her to the Lake County Jail.

{¶40} It is clear from the record that Lake County issued an arrest warrant for Ms. Garver after learning she had been incarcerated in the Missouri prison. The prosecutor, who put the warrant in place, acted with "diligence" in placing a "holder" on her at the prison, i.e., the state took immediate action upon the issuance of the arrest warrant to notify the authorities in Missouri that they were not to release Ms. Garver without Lake County first having the opportunity to retrieve her. Based upon the facts presented, this writer determines the trial court properly applied *Caccamo* and *Fugate* and did not act contrary to law in granting Ms. Garver 236 days of jail time credit.

{¶41} Because I would affirm the judgment of the trial court, I respectfully dissent.